[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12254
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-03542-SCJ


BETTY WILLIAMS,

                Plaintiff - Appellant,

versus

Q. D. HUDSON,
T. CASTILLO,

                Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 11, 2015)

Before TJOFLAT, WILSON, and COX, Circuit Judges.

PER CURIAM:

## Introduction

This is a civil case under 42 U.S.C. § 1983.  It arises out of an October 27, 2010, incident between the Plaintiff, Betty Williams ("Mrs. Williams"), her son Zachery Williams ("Mr. Williams"),[1] and the Defendants, Officers Q. D. Hudson ("Officer Hudson") and T. Castillo ("Officer Castillo") (collectively, "the Officers").  We affirm.

## I.   Facts and Procedural History

The parties are familiar with the facts of this case, and we describe them only as background.  We have reviewed the summary judgment record for purposes of the summary judgment issues, and the entire record for all other purposes.

On the evening of October 27, 2010, Officers Hudson and Castillo received a "suspicious person" call.  The caller said that a person was outside Mrs. Williams's house attempting to break in.  The address referenced in the call was Mrs. Williams's home.  The "suspicious person" was said to have been sitting out front for an extended period of time.  When the Officers arrived, they found Mr. Williams in front of the house.  Mr. Williams matched the description of the

---

[1] According to the district court, there are two spellings of Mr. Williams's name in the record ("Zackary" and "Zachery"). (Order on Def.'s Mot. for Summ. J., D.E. 38 at 2 n.1).  For ease of discussion, we use the "Zachery" spelling, which appears in Mrs. Williams's brief.

"suspicious person." Mr. Williams informed the officers that his mother lived at the house and that she was on her way home. The Officers asked to see Mr. Williams's identification. He refused. They then asked for his name and date of birth. He again refused.

Mrs. Williams then arrived at the home in her car. She told the police that she lived at the home, and that Mr. Williams was her son. She asked the Officers to leave. The Officers refused to leave and continued to demand Mr. Williams's name and date of birth. At this point, Mrs. Williams used her garage door opener to open the garage door and pulled her car into the garage. The Officers followed her into the garage, as did Mr. Williams.

What occurred next was disputed. But, the parties agree on the following: (1) Mrs. Williams attempted to lead her son into the house; (2) Mrs. Williams was physically prevented from doing so by the Officers; and (3) Mrs. Williams was physically taken to the ground by the Officers and placed under arrest. The parties disagreed about whether the Officers' conduct was unprovoked or whether Mrs. Williams and her son became disorderly and violent.

Mrs. Williams was initially charged with simple battery on an officer under O.C.G.A. § 16-11-39 and obstruction of investigation under O.C.G.A. § 16-10-24.[2]

---

[2] The police report also stated that Mrs. Williams was being charged with obstruction under O.C.G.A. § 16-10-24.1. As the district court noted, the reference to O.C.G.A. § 16-10-

3

After she completed a pre-trial diversion program, the state dropped the charges against Mrs. Williams.[3]

On October 18, 2011, Mrs. Williams filed this lawsuit, alleging claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments of the United States Constitution, as well as state law claims. In short, Mrs. Williams alleged an illegal search based on the Officers' entry into her garage, an illegal arrest, and excessive force.

The Officers filed a motion for summary judgment on all claims, contending that they were entitled to qualified immunity. The district court granted qualified immunity on the alleged illegal search, and denied qualified immunity on all other claims.

At trial, the district court allowed the Officers' counsel to question Mrs. Williams about a $2,288 payment she had made to or on behalf of Mr. Williams. Mrs. Williams's counsel objected, arguing that this payment was made months after the incident in question and was, therefore, irrelevant. The district court overruled the objection.

---

24.1 in the police report was likely a mistake. This statute deals with obstructing firefighters. (Order on Def.'s Mot. for Summ. J., D.E. 38 at 6 n.7).

[3] In § 1983 cases, a plaintiff who was convicted of the crime giving rise to the claim cannot ordinarily bring suit (unless the conviction is vacated). *See Heck v. Humphrey*, 512 U.S. 477, 114 St. Ct. 2364 (1994). Based on the limited facts in the record, and the Officers' failure to raise this issue, we assume that Mrs. Williams having completed a pre-trial diversion program is not a barrier to her bringing this suit.

At the close of evidence, Mrs. Williams requested a number of jury instructions that were denied by the district court. Two are challenged in this appeal, and are quoted in their entirety below.

> To prove obstruction, a defendant must show that the obstruction was knowing and wilful and that it occurred while the defendant was in lawful discharge of his official duties. '(A) police officer is not discharging his lawful duty when he arrests an individual without reasonable or probable cause.' Further, an officer is not within the lawful discharge of his official duties when he approaches and questions an individual without specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. Where circumstances do not provide an officer with articulable suspicion (less than probable cause, but greater than mere caprice) that the law has been or is about to be violated, the officer's act of detaining and questioning an individual is nothing more than a police-citizen encounter outside the scope the officer's "official" police duties. What must be minimally articulated in such cases to authorize a finding that an officer is lawfully discharging his "official duties" under OCGA § 16–10–25 are particular facts providing reason for an officer's impression for the need to investigate criminal behavior. Defendants must articulate such grounds in this case. Determining Plaintiff's son's name and date of birth is outside the scope of his "official" police duties. While keeping a "little notebook pad" of suspects may be good police practice, the collection of such information—as a matter of police routine unsupported by articulable suspicion of criminal activity—cannot be constitutionally justified.

(Pl.'s Proposed Jury Instructions, D.E. 44 at 14–15) ("Charge # 8").

> A deputy sheriff who lacks probable cause but whose observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke suspicion. This means the deputy may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not required to respond. And unless the detainee's answers

5

provide the officer with probable cause to arrest him, he must be released.

(*Id*. at 18) ("Charge # 11").

The case was submitted to the jury. The jury returned a verdict in favor of the Officers on all claims tried.

## II. Contentions on Appeal

Mrs. Williams raises four contentions on this appeal.[4] First, she contends that the district court erred in granting the Officers qualified immunity on the illegal search claim. Second, she contends that the district court erred in failing to give Charge # 8 to the jury. Third, she contends that the district court erred in failing to give Charge # 11 to the jury. Finally, she contends that the district court erred in allowing the Officers' counsel to question Mrs. Williams about the $2,288 payment.

## III. Standard of Review

We review an order granting summer judgment de novo. *Skrtich v. Thornton*, 280 F.3d 1295, 1299 (11th Cir. 2002).

---

[4] Mrs. Williams raises a number of additional contentions related to whether the Officers had reasonable suspicion to continue their investigation after she arrived at the house. However, Mrs. Williams fails to identify an order or evidentiary ruling properly before this court. She only cites to a statement made by the district court in the process of denying summary judgment on the issue of qualified immunity for the alleged illegal arrest. (Order on Def.'s Mot. for Summ. J., D.E. 38 at 34). This is not an appealable order. So, we review these arguments only as they relate to the proposed jury instructions that were denied by the district court.

6

We review a district court's refusal to give a requested jury instruction using a multi-step analysis. First, we ask whether the instruction was adequately covered by another instruction. If it is covered by another instruction, it is not error. If it is not, we ask (1) whether the requested instruction is a correct statement of the law; and (2) whether it covers an issue properly before the jury. If the answer to both of these questions is yes, there still must be a showing of prejudice as a result of the failure to give the instruction in order for us to grant a new trial. *Dempsey v. Mac Towing, Inc.*, 876 F.2d 1538, 1542 (11th Cir. 1989).

We review evidentiary rulings for abuse of discretion. *Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300, 1309 (11th Cir. 2014). "In order to justify granting a new trial, an error must have affected substantial rights or caused substantial prejudice; otherwise, the error is harmless." *Id.* (quotations omitted).

### IV.   Discussion

#### a.   Qualified Immunity on the Officers' Entry into the Garage

We consider the evidence in the light most favorable to Mrs. Williams. Parties seeking qualified immunity must first establish that they were acting within the scope of their discretionary authority. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136–37 (11th Cir. 2007). If the Officers can make this showing, the burden shifts to Mrs. Williams to establish (1) that the Officers violated her Fourth Amendment

7

rights; and (2) that those rights were "clearly established" at the time of the incident. *Id.*

The district court properly determined that the Officers were acting within the scope of their discretionary authority. (Order on Def.'s Mot. for Summ. J., D.E. 38 at 16–17). So, the burden shifts to Mrs. Williams.

In the light most favorable to Mrs. Williams, the evidence fails to show that the Officers violated a clearly established constitutional right of Mrs. Williams. In *Coffin v. Brandau*, we determined that entry into an open garage can constitute a search under the Fourth Amendment under certain circumstances. 642 F.3d 999, 1012 (11th Cir. 2011) (en banc). We also determined that, prior to the date *Coffin* was decided, this right was not clearly established. *Id.*

The incident in this case occurred prior to our decision in *Coffin*. However, clearly established law may differ from state to state. See *Courson v. McMillian*, 939 F.2d 1479, 1498 n.32 (11th Cir. 1991) (where neither the Eleventh Circuit nor the United States Supreme Court has addressed a federal constitutional issue, clearly established law may include the decisions of the highest court of the state in which the incident occurred). Coffin involved an incident in Florida. This case involves an incident in Georgia. Thus, we are bound by our determination in *Coffin* that this right was not clearly established in 2010 under Eleventh Circuit law

8

or United States Supreme Court law, but we must determine whether this right was clearly established under Georgia Supreme Court law.

Mrs. Williams only cites one Georgia Supreme Court case on this issue. *See Landers v. State*, 250 Ga. 808 (Ga. 1983). The question in *Landers* was whether a warrant for the search of a dwelling allowed for the search of a vehicle on a neighboring lot. *Id.* at 809. The case does not address the issue before us, and Mrs. Williams has failed to demonstrate that the Officers violated a clearly established constitutional right. The district court properly concluded that the Officers were entitled to qualified immunity on the illegal search claim.

### b. Jury Charge # 8

First, we must determine whether Charge # 8 was covered by the instructions given. We agree with Mrs. Williams that it was not.

Next, we ask whether Charge # 8 is a correct statement of the law. It is not.[5] It includes the statement, "Determining Plaintiff's son's name and date of birth is outside the scope of his 'official' police duties." This is not a correct statement of the law. As long as the Officers had reasonable suspicion to justify a *Terry* stop, they were permitted to continue their investigation into Mr. Williams's identity. *Cf. Hiibel v. Sixth Judicial Dist. Court of Nevada*, 542 U.S. 177, 188, 124 S. Ct. 2451,

---

[5] It may be the case, as Mrs. Williams argues, that Mrs. Williams was entitled to the portion of Charge # 8 that asks the jury to determine whether the Officers had reasonable suspicion to continue their investigation after she arrived at the house. However, it is not for the district court to redact the incorrect statements of law in a proposed jury instruction. The entire instruction must be a correct statement of the law. If it is not, this ends our inquiry.

2459 (2004) ("Petitioner's concerns are met by the requirement that a *Terry* stop must be justified at its inception and reasonably related in scope to the circumstances which justified the initial stop." (quotations omitted)).

Because Charge # 8 contains an incorrect statement of the law, the district court correctly concluded that Mrs. Williams was not entitled to this instruction.

### c. Jury Charge # 11

As with Charge # 8, we agree with Mrs. Williams that Charge # 11 was not adequately covered by the instructions given. However, as with Charge # 8, it is not a correct statement of the law. It includes the statement, "[T]he deputy may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not required to respond." This proposed instruction is contrary to Georgia law and the United States Supreme Court's decision in *Hiibel*. *See Bailey v. State*, 190 Ga. App. 683, 683 (Ga. Ct. App. 1989) (finding that failure to identify oneself can constitute obstruction under O.C.G.A. § 16-10-24); *Hiibel*, 542 U.S. at 188–89, 124 S. Ct. at 2459–60 (upholding a similar law under the Fourth Amendment, where there is reasonable suspicion to justify a *Terry* stop).

Because Charge # 11 contains an incorrect statement of the law, the district court correctly concluded that Mrs. Williams was not entitled to this instruction.

### d. Questions Regarding Mrs. Williams $2,288 Payment

Mrs. Williams argues at length in her brief that allowing this line of questioning over her counsel's objection was error. However, she fails to articulate how this alleged error impacted the jury's decision or otherwise affected her substantial rights. *See Coquina Invs.*, 760 F.3d at 1309. ("In order to justify granting a new trial, an error must have affected substantial rights or caused substantial prejudice; otherwise, the error is harmless." (quotations omitted)). Thus, Mrs. Williams has failed to make the necessary showing on appeal to justify relief, and we need not determine whether the district court's ruling was error.

## V. Conclusion

For the foregoing reasons, the district court's judgment is affirmed.

AFFIRMED.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Amy C. Nerenberg
Acting Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 11, 2015

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 14-12254-AA
Case Style: Betty Williams v. Q. Hudson, et al
District Court Docket No: 1:11-cv-03542-SCJ

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call David L. Thomas, AA at (404) 335-6169.

Sincerely,

AMY C. NERENBERG, Acting Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs